UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA ACOSTA, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br><br>PATENAUDE & FELIX,<br><br>                                    Defendant. | Case No.: 19-cv-954-CAB-BGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>[Doc. Nos. 38, 39] |

        This matter is before the Court on the Plaintiff's unopposed motion for final approval of class action settlement and motion for attorneys' fees, costs, and incentive award.  [Doc. Nos. 38, 39].  The Court held a telephonic hearing on these motions on September 10, 2020.[1]  Nicholas Bontrager, Esq. appeared for Plaintiff and Christopher Holt, Esq. appeared for Defendant.  As discussed below, the motion for final approval of the class action settlement and the motion for attorneys' fees, costs, and incentive award are granted.

## BACKGROUND

        This consumer class action arises from Plaintiff Amanda Acosta's ("Plaintiff") allegations that Defendant Patenaude & Felix sent Plaintiff and other similarly situated consumers letters attempting to collect upon an alleged debt which were in violation of 15

---

[1] Due to the current COVID-19 national health emergency, all civil matters are being handled by telephonic appearances.  Order of the Chief Judge, No. 18-A.  Notice was provided to the public of the telephonic procedures at Doc. No. 37.

U.S.C. § 1692 *et seq.*, the Fair Debt Collection Procedures Act ("FDCPA").  Based on these facts, named Plaintiff Amanda Acosta brought suit against Defendant alleging a single cause of action for violation of the FDCPA, 15 U.S.C. § 1692g(b).

Plaintiff filed this action on May 22, 2019.  [Doc. No. 1.[2]]  On July 12, 2019, Defendant filed an answer.  [Doc. No. 8.]  On February 24, 2020, the parties filed a notice of settlement.  [Doc. No. 25.]  On April 23, 2020, Plaintiff filed an unopposed motion for preliminary approval of the proposed settlement and the proposed notice of settlement to class members ("Class Notice").  [Doc. No. 29.]  On May 14, 2020, the Court issued an Order preliminarily approving class settlement and approved the proposed Class Notice.  [Doc. No. 36.]  The Final Approval Hearing was set for September 10, 2020, at 2:00 p.m.  [*Id.*]

Currently before the Court is the Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Incentive Award.  [Doc. Nos. 38, 39.]

## OVERVIEW OF THE SETTLEMENT

**A.  Class Definition.**

The proposed class consists of: "All consumers in the United States who were sent a letter that is identical to or is substantially the same form as the Letter[3], which seeks to collect an alleged consumer debt, within one year prior to the filing of this action and which was not returned as undeliverable."  [Doc. No. 39-2 at 11.]

**B. Settlement Terms.**

The proposed Settlement and terms are attached to the motion for final approval of class action settlement.  [Doc. No. 39-2 at 8-25.]  Under the proposed Settlement, the claims of all Class Members who did not timely request exclusion from the Settlement shall be settled for a Settlement Fund of Fifteen Thousand Seven Hundred and Fifty dollars

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[3] "Letter" means the letter sent by Defendant to Plaintiff on or about April 22, 2019, a copy of which is attached to the complaint as exhibit A.  [Doc. No. 39-2 at 11.]

($15,750.00).  [Doc. No. 39-2 at 16.]

### 1. Individual Settlement Payments

Each of the 31,843 individual Settlement Class Members who timely submitted a claim form will receive a pro rata payment from the Settlement Fund.  If any funds remain in the Settlement Fund from uncashed or undeliverable checks 60 days after all timely claims have been paid, the Parties will make a pro rata redistribution of the residual funds to the Settlement Class Members who cashed their first settlement checks.  [Doc. No. 39-2 at 17.]

### 2. Cy Pres

In the event, however, that if the residual funds are insufficient to provide payment of at least $5.00 to each such Settlement Class Member, no redistribution will take place. In that instance, residual funds will be disbursed to the California Western School of Law Community Law Project as a *cy pres* recipient.  If any funds remain in the Settlement Fund from uncashed or undeliverable checks 60 days after the redistribution, residual funds will be disbursed to the California Western School of Law Community Law Project as a *cy pres* recipient.  [Doc. No. 39-2 at 17, 18.]

### 3. Class Counsel Fees and Expenses

Subject to Court approval, Plaintiff shall petition the Court for an award of attorneys' fees, costs, and expenses.  Plaintiff requests a total of Forty Thousand Six Hundred Fifty-Eight dollars and Fifty cents ($40,658.50) in attorneys' fees and costs.  [Doc. Nos. 38, 41.]

### 4. Class Representative Incentive Award

Subject to Court approval, in exchange for release of her claims, and in recognition of the time and effort in litigating this matter, Plaintiff Amanda Acosta shall be entitled to payment of a Class Representative Incentive Award of Seven Hundred and Fifty dollars ($750.00).  [Doc. No. 39-2 at 18.]

### 5. Claims Administration Costs

Separate from the Settlement Fund, any payment to Plaintiff, and the attorneys' fees, costs, and expenses of Class Counsel, Defendant will be responsible for paying all costs of

class notice and administration of the settlement by the Class Administrator, First Class, Inc.  [Doc. No. 39-2 at 19.]

### 6. Release

Upon final approval of the Settlement Agreement, Plaintiff and the Class Members fully, finally, and forever settle, release, and discharge the Released Parties from the Released Claims, and are forever barred from asserting any of the Released Claims in any court against any of the Released Parties.  [Doc. No. 39-2 at 16.]

### C.  Notice to Class Members

Pursuant to the Preliminary Approval Order, the Class Notice was reasonably calculated to, under all the circumstances, reasonably apprise the Class Members of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.  The Settlement Administrator, First Class, Inc., was responsible for preparing and administering the Class Notice.

On May 14, 2020, First Class, Inc. acquired the domain AcostaFDCPASettlement.com ("Settlement Website"), and on May 29, 2020, First Class, Inc. posted to the Settlement Website the Settlement Notice, Complaint, Settlement Agreement, Preliminary Approval Order, Printable Claim Form, Printable Exclusion Form, and an interactive Claim Form Submission page.  The interactive Claim Form Submission page was disabled on August 4, 2020.  On May 18, 2020, First Class, Inc. established a toll-free telephone number that Class Members can call for information about the settlement, and where Class Members can leave a message to have their call returned if needed.

Prior to emailing and mailing the notice to individuals on the class list, First Class, Inc. followed its standard practice of checking for and removing exact duplicate records within the class list, and in this case, 6 duplicate records were found and removed.  The notices were emailed to 26,644 class member email addresses beginning on May 30, 2020 and finishing on or before June 4, 2020.  Of those, 1,226 emails either bounced, were

delayed, or were marked spam complaint.  Prior to mailing the notice to the individuals on the class list who did not have an email address, or whose emailed notice bounced, was delayed, or was marked as spam complaint, First Class, Inc. followed its standard practice of processing those records through the Coding Accuracy Support System (CASS) and the NCOA (National Change of Address) update process of the U.S. Postal Service using software certified by the U.S. Postal Service.  The notices were mailed on June 17, 2020 to 6,468 class member mailing addresses.  As of July 10, 2020, 23,205 records in the class list had an email address that had not previously bounced and had not submitted a claim form.  A second batch of notices were emailed to those 23,205 class member email addresses beginning on July 13, 2020 and finishing on or before July 20, 2020.  Of those, 79 emails either bounced, were delayed, or were marked spam complaint.  As of September 3, 2020, a total of 216 mailed notices have been returned as undeliverable with no forwarding address or further information provided by the U.S. Postal Service.  As of September 3, 2020, a total of 61 mailed notices were either forwarded by the U.S. Postal Service to a new address or were returned by the U.S. Postal Service with a new address and re-mailed.

As of September 3, 2020, First Class, Inc. has received no objections, 20 requests for exclusion, and 4,209 valid claim forms.  The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Class Members.  The Court finds and determines that the Class Notice provided in this case was the best practicable, which sufficiently satisfied the requirements of law and due process.

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### 1. LEGAL STANDARD

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's

intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

## 2. ANALYSIS

### A. Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiff contends she has a strong case that was appropriately settled for an amount that is approximately 70% of the maximum class-wide statutory damages allowed under the FDCPA.  [Doc. No. 39-1 at 17.]  While Plaintiff strongly believes in the merits of the case, the risk of continued litigation of the issues could have significantly reduced her damages.  *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory [under the FDCPA], continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class.").  Therefore, this factor weighs in favor of approving the settlement.

### B.  The Risk of Maintaining Class Action Status Through Trial

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement.  *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

While it does not appear there would be any issue with maintaining class certification here, had the case not settled, Defendant could have opposed Plaintiff's motion for class certification, and the Court could have revisited class certification at any point.  Therefore, this factor weighs in favor of approving the settlement.

## C.  The Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528.  In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Based on the parties' representations, it appears that the Settlement Agreement resulted from arms-length negotiations and was not the result of collusion.  After months of litigation and discovery efforts, the settlement here was achieved with a clear view as to the strengths and weaknesses of the case.  The parties exchanged discovery concerning the net worth of Defendant, class damages, and the number of potential class members.  As a result, Plaintiff and Class Counsel were able to adequately assess the maximum potential statutory damages recoverable at trial.  Plaintiff and Class Counsel had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is fair, adequate, and reasonable.  Therefore, this factor weighs in favor of approving the settlement.

## D.  The Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV,* 221 F.R.D. at 527 (internal citation and quotation marks omitted).  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (citations omitted).

Here, the immediate cash relief provided to class members represents nearly 70% of the maximum class-wide statutory damages allowed by the FDCPA, which is capped by statute at one percent of Defendant's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B) ("in the case of a class action, (i) such amount for each named plaintiff as could be recovered under

subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"). To date, 4,209 class members have submitted valid claims forms, and if no further claims are submitted, each of these claimants will receive approximately $3.00. Further, by settling this matter, both parties avoid the expense of trial and uncertainty of outcome. If this matter proceeded to trial the net value of the recovery could be further decreased due to the costs of compelling further discovery, retaining expert witnesses, preparing for trial and possibly, engaging in post-trial matters, including the lodging of an appeal. Therefore, this factor weighs in favor of approving the settlement.

### E.  Fair and Adequate Representation During Settlement Negotiations

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted).

Class Counsel assert they are well qualified and experienced in consumer litigation. Martin & Bontrager, APC has engaged exclusively in the area of consumer rights litigation, primarily in the areas of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Telephone Consumer Protection Act, as well as other related consumer protection laws. The attorneys at Martin & Bontrager, APC also have substantial experience prosecuting consumer litigation and complex consumer class action. Therefore, this factor weighs in favor of approving the settlement.

### F.  Class Reaction to the Proposed Settlement

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian*

*& German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not file an opposition).

To date, no Class Member has objected to the settlement and only 20 have requested exclusion from the settlement.  Given the overall positive reaction from Settlement Class Members, this factor also weighs in favor of approving the settlement.

### 3. CONCLUSION

Because the factors outlined above favor approving the Settlement, the Court **GRANTS** the motion and finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

### MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

Plaintiff seeks attorneys' fees and costs in the amount of $40,658.50 and an incentive award of $750.00.  [Doc. Nos. 38, 41.]  The uncontested motion is made on the following grounds:

### 1. Attorneys' Fees and Costs

Courts have an independent obligation to ensure that the amounts requested for attorneys' fees and any class representative service award, like the settlement, are reasonable. *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have the discretion to employ a "percentage of recovery method." *Id*. at 942.  Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award.  *Id*.  Injunctive relief should generally be excluded from the value of the common fund when calculating attorneys' fees because most often the value of the injunctive relief is not measurable. *Staton v. Boeing Co.*, 327 F.3d 938, 945–46 (9th Cir. 2003).  "The 25% benchmark rate, although a starting point for the analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Thus, courts are encouraged to

cross-check this method by employing the "lodestar method" as well.  *In re Bluetooth*, 654 F.3d at 949.

In the "lodestar method," the court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work.  *In re Bluetooth*, 654 F.3d at 941.  The hourly rate may be adjusted for the experience of the attorney.  *Id.*  "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class."  *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  The resulting amount is "presumptively reasonable."  *In re Bluetooth,* 654 F.3d at 949.  However, "the district court . . . should exclude from the initial fee calculation hours that were not 'reasonable expended.'"  *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (*Hensley v. Eckerhart*, 401 U.S. 424, 433–34 (1983)).  The court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in considerations, the benefit achieved for the class.  *In re Bluetooth*, 654 F.3d at 942.

Here, the Court notes that the settlement amount obtained represents approximately 70% of the maximum class-wide statutory damages recoverable by the FDCPA.  Class Counsel's fee request is comprised of 77.90 hours of attorney time at hourly rates ranging from $495.00 to $550.00 per hour and 4.90 hours of paralegal time at an hourly rate of $150.00 per hour.  In support, the motion includes Class Counsel's declarations and itemized billing statements detailing the time spent working on this action, a consumer law attorney fee survey report, and declarations from experienced consumer law attorneys. [Doc. Nos. 38-1, 38-2, 38-3.]  Upon review of the motion and support thereof, the hours and rates are fair and reasonable.

Class Counsel also seek reimbursement of their costs in the amount of $450.00.  Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties'

agreement." Fed. R. Civ. P. 23(h).  Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  See In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-92 (1970)); Staton, 327 F.3d at 974.  Here, Class Counsel seeks recovery of its costs of $450.00, which represents the filing and service of process fees reasonably incurred in connection with the prosecution of this litigation and were advanced by Class Counsel for the benefit of the Class.

Therefore, the Court **APPROVES** attorneys' fees and costs in the amount of **$40,658.50.**

### 2.  Class Representative Incentive Award

Plaintiff Amanda Acosta seeks a class representative incentive award of $750.00.  "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[ ]."  *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015).  Nonetheless, the court has an obligation to assure that the amount requested is fair.  *In re Bluetooth*, 654 F.3d at 941.  "The propriety of incentive payments is arguably at its height when the award represents a fraction of the class representative's likely damages . . . . But we should be more dubious of incentive payments when they make the class representative whole, or (as here) even more than whole."  *In re Dry Pampers Litig*., 724 F.3d 713, 722 (6th Cir. 2013).

Here, Plaintiff Amanda Acosta expended several hours assisting Class Counsel and the Settlement Class Members in this action by way of time spent assisting with pre-litigation investigation, reviewing the complaint and other pleadings, reviewing and executing settlement documents, reviewing motions, executing various declarations, and numerous emails and telephone conferences with Class Counsel.  Accordingly, the Court **APPROVES** an incentive award of **$750.00** to Plaintiff Amanda Acosta.

## CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. The Court **GRANTS** Plaintiff's motion for final approval of class action settlement pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, and that the settlement was entered into in good faith, and that Plaintiff has satisfied the standards for final approval of a class action Settlement under federal law.

2. The Court **GRANTS** Plaintiff's motion for attorneys' fees, costs and class representative incentive award as follows:

   a. The Court **APPROVES** Plaintiff's request for an award of attorneys' fees and costs in the amount of **$40,658.50**.

   b. The Court **APPROVES** a class representative incentive award of **$750.00**.

3. Plaintiff's counsel shall submit a proposed judgment for the Court's review and execution no later than **September 17, 2020**.

It is **SO ORDERED**.

Dated:  September 10, 2020

Hon. Cathy Ann Bencivengo
United States District Judge

19-cv-954-CAB-BGS